Let's wait a minute and let everyone get settled. Yes, Your Honor. Okay, Mr. Davis. Good morning, Your Honors. May it please the Court, my name is Ashby Davis and I represent the appellants in this matter, Jason Allgrunn, Michael Banta, and Jeffrey Henderson, Jr. The District Court committed legal error in denying appellants' motion for summary judgment based on qualified immunity and statutory immunity under Louisiana law. There are many issues in this case, but this morning I want to focus with you on three issues. First, there was probable cause to take appellees Curtis and Angela Terrell into custody. Second, Deputy Allgrunn used only reasonable force, not excessive force, on both Curtis and Angela. Third, none of the appellants violated clearly established law or committed any acts that would deprive them of their statutory immunity under Louisiana law. As to each of those three issues, I want to address multiple legal errors that the District Court made and I'll list them for you here. First, the District Court applied a subjective rather than an objective Fourth Amendment standard in violation of extensive Supreme Court precedent. Second, the District Court failed to view the incident from the perspective of a reasonable officer on the scene would have perceived the events as the events were unfolding before him. That's in violation of multiple precedents of the Supreme Court and this Court, including Tucker v. City of Shreveport by Judge Englehart. Third, the District Court failed to consider the totality of the circumstances, including all the facts shown by the undisputed video and audio evidence, to which the Court must assign greater weight even at the summary judgment stage. That's in violation of Carnaby v. City of Houston by Judge Smith. Fourth, the District Court defined clearly established law at a high level of generality rather than with specificity, which, as the Supreme Court has said numerous times in recent years, is extremely important, especially in the Fourth Amendment context where these cases are all very fact-specific. So, to my first point, there was probable cause as to both Curtis and Angela Terrell. We've briefed numerous crimes on which we believe there was probable cause, as shown by the undisputed video and audio evidence. I'll focus, with respect to Curtis Terrell, first on disturbing the peace by public intoxication. As I understand it, the standard is that there must only be arguable probable cause. That's correct, Your Honor. That's Brown v. Lyford. That's a 2001 Fifth Circuit case. I think that's describing, really, the second prong of qualified immunity, which is, the first prong is, was there probable cause? The second prong would be, was there at least arguable probable cause in light of clearly established law at the time that the officer was acting? Certainly, we would submit that there was actually probable cause, but alternatively, if the Court finds that there wasn't, then there was at least arguable probable cause at the second prong of qualified immunity. I think neither the District Court nor the appellees in this case have cited any cases that would have indicated to every reasonable officer that there was not probable cause for any of the crimes that we've listed and briefed. As to disturbing the peace by intoxication, it consists of appearing in an intoxicated condition in such a manner as would foreseeably disturb or alarm the public. So in order to do this properly, we must look at what facts Deputy Algren knew at the time. So he knew, based on radio transmissions that had been provided to him by the Sheriff Dispatcher, that Curtis Terrell had been running up and down three separate residential streets at 10 p.m. on a Sunday night. He had been drinking that day. He had taken a bunch of pills. Deputy Algren states in the radio transmissions, based on that behavior, he suspected, as it turns out correctly, that Mr. Terrell was on something else. It turns out Mr. Terrell was also on methamphetamine. Deputy Algren knew that Curtis' condition had been disturbing enough for his wife to call 911. He knew that there were multiple houses with cars parked right in front of them in the location where he found Mr. Terrell and Mrs. Terrell. As he's driving up to the scene, there's a neighbor, and it's just a couple seconds on the video where you see the neighbor, but as Deputy Algren gets out of the car, the neighbor says, that's him right there. A reasonable officer could perceive that as the neighbor pointing to the source of a disturbance that has caused her to come outside of her house at 10 p.m. on a Sunday night. He also personally observed Curtis' behavior and condition and perceived that he was under the influence of alcohol or a narcotic, as he stated in his report. That's page 367 and 383 of the record. So that's more than enough to constitute probable cause for disturbing the peace by intoxication. In our reply brief, and we cited it in our original brief, but we discussed it at length in our reply brief, there's a Louisiana Court of Appeal opinion that's the Trapanier case that is actually much weaker facts than this. It happened at 5 o'clock at night. The individual was in his backyard. He was drunk. He was cursing. He was adjacent to a public road, and there were other houses in the area, and the court affirmed his conviction beyond a reasonable doubt for disturbing the peace by intoxication. Our case happened late at night. Under the Supreme Court's precedence, you know, officers can make common sense conclusions about human behavior. It's more foreseeable that there would be a disturbance at 10 p.m. at night than there is at 5 p.m. It's also, in this case, we had evidence in the form of the neighbor's statement, that's him right there, that this was an actual disturbance rather than just merely a foreseeable disturbance, which is more than the statute requires. So there was clearly probable cause as to Curtis for disturbing the peace by intoxication. The district court applied an expressly subjective Fourth Amendment standard, and that's erroneous. To read what the court said, it said, in this case, plaintiffs have provided sufficient summary judgment evidence to call into question whether Algren actually believed that Mr. Terrell was disturbing the peace. That is not the standard. The court emphasized this term actually with italics. That's not the standard. It's an objective standard, not a subjective standard. We briefed a lot of different crimes for which there was probable cause as to Curtis Terrell. I'll focus on another one. Later in the incident, after Mr. Terrell has actually been handcuffed, he actually bites Deputy Algren, and he admits this in paragraph 27 of his amended complaint, page 182 of the record. And so that is not only resisting an officer, which is 14-108, it's also resisting an officer with force or violence because he attempted to injure the officer while he's acting in the performance of his duties. And so that's clearly probable cause to arrest Curtis Terrell. He also engaged, before he got to that, in multiple other acts of resistance, including not complying with commands and actually pulling away, which I'll get to when I talk about the excessive force claim. Let's talk about Angela Terrell. Angela Terrell was briefly detained for about 10 minutes in the back of the car. While Curtis Terrell was on the ground, okay, there's a point in the video where he's on the ground and Officer Algren is attempting to place handcuffs on him, Angela multiple times is told to back away. She doesn't back away. Later in the incident, while EMS officers are present and trying to inspect Mr. Terrell and while Mr. Algren is on his radio trying to communicate facts back to dispatch, she refuses numerous commands to back away. And the cases that we cited at the district court and here show that even one instance of a refusal to back away after an officer's command constitutes probable cause to arrest for interfering with a law enforcement investigation under Louisiana Revised Statute 14,329A. And in this case, we have numerous instances of Ms. Terrell refusing to follow commands and back away. I'll turn to the issue of use of force. You have to look at this incident in three different steps as to the use of force. So Deputy Algren gets Curtis Terrell in front of his vehicle and he says, I need to check and make sure you don't have any weapons on you. Curtis is like this at a certain point and Deputy Algren says, put your hands behind your back. As he says that, Curtis does this motion right here and turns to face Algren, at least partially face Algren. And at that point, Deputy Algren takes Curtis to the ground. But what the district court did not assess in its analysis of this issue is that right before he did that, Curtis also called for a neighbor to come outside. He said, hey Shirley, tell Dick to come outside. And so that increased the threat level to Algren. A reasonable officer on the scene could think, I'm here, I've got this individual who's been belligerent, he's intoxicated, and then eventually he pulls away from the deputy. I've got to get this individual under control before this situation escalates quickly. And also it should be noted that Algren is the only deputy there at the time. The other two deputies don't show up until well after the relevant events have occurred, Banta and Henderson. And so the takedown is the first use of force. It's reasonable under the circumstances given the facts that I've told to you just now. The district court's analysis of the takedown issue is very puzzling because there's three gram factors that must be considered in every excessive force case. And the third, which this court has said is the most important, it has actually said that the first two are less salient. The third is whether or not the suspect is resisting. And the court said, because Mr. Terrell was jittery, could not stand still, and attempted to look back at Algren on two occasions, a fact finder may determine that Mr. Terrell was resisting arrest. But then the court denied qualified immunity, and that doesn't make sense. Because if it's reasonable for a fact finder sitting in the comfort of a jury deliberation room to find that he was resisting arrest, then it was certainly reasonable for Mr. Algren, who's acting under the tense and rapidly evolving circumstances that are confronting him, to believe that he was resisting arrest, and to take him down to try and gain compliance from him and make sure that the situation doesn't escalate any further. So that's the first use of force. While they're on the ground, Mr. Terrell expressly says, after Deputy Algren says put your hands behind your back multiple times, Mr. Terrell says, I'll put my hands behind my back when you be nice, all right, be nice. That's an express statement of his intent to continue resisting and the fact that he's resisting right then. Mrs. Terrell, a few seconds later, says, baby, just put your hands behind your back. As Deputy Algren continuously says, put your hands behind your back. So Deputy Algren delivered, I think it was a total of four strikes after he had told Mr. Terrell to put his hands behind his back. They were with limited wind up. And so the case law says that that's reasonable under the circumstances. Mr. Davis?  After the deputy takes the plaintiff to the ground, the dash cam doesn't really show what happened on the ground. The audio reflects what you've just recounted, but given the allegations or averments in the declarations and affidavits of the plaintiff, along with the fact that you can't see what's happening on the ground from the dash cam video, why was it error to hold that there was a genuine issue of material fact on the use of force? What they're saying isn't necessarily what's happening. I think, respectfully, Your Honor, I think that what they're saying is what's happening. Because he's actually saying, I'm not gonna comply with your orders effectively. And so a reasonable officer could perceive that as an indication that he's not going to stop resisting. I think it's also important, in their declarations, they don't, those are very cursory and short declarations. They do not deny that during that key part of the incident, while they're on the ground, that Curtis Terrell was continuing to resist. And we have evidence on the other side of the scale that expressly says that he was continuing to resist, and that's contained in Allgren's reports, pages 367 and 383 of the record. If the affidavits and declarations say he was laying flat on his stomach and had his hands behind his back, why isn't that a genuine issue of fact for a jury to determine if you've got evidence on both sides? Well, I don't think that's what they say, Your Honor, from what I recall. But I think also the video very clearly shows also Allgren struggling with Mr. Terrell. He has to actually physically reposition his body. He's continually saying, stop resisting and put your hands behind your back. And I think the plaintiff's own words, if that's what they say, and I don't think that's what those declarations say. Well, let me read it to you. As Deputy Jason Allgren tried to handcuff me, I laid flat on my stomach with my hands behind my back and waited for him to handcuff me. Your Honor, I think that's blatantly contradicted by the evidence in the record, meaning the video evidence. The video that doesn't show him on the ground. It doesn't show everything that happens on the ground, but it does certainly show exactly what Deputy Allgren's doing. And I think Mr. Terrell's own words contradict what he's saying there, as well as just the entire picture of the video, what Allgren's doing and what Mrs. Terrell is doing, which is, it doesn't make sense. That statement doesn't make sense if Mrs. Terrell, 10 seconds or so after Mr. Terrell has already said, I'm not going to put my hands behind my back until you be nice. Mrs. Terrell is also saying, baby, just put your hands behind your back. So if that's what his testimony is, that's blatantly contradicted by the record. And under Scott versus Harris, the court doesn't have to take that into account. That's effectively a sham affidavit, is what it is. Well, Judge Ramirez is asking a good question here under our case law, because to the extent that it's not shown on the video, once a district judge has identified a dispute of material fact, we can't go behind that. Now, we can decide that it's not material in some cases, but if it's material, then we don't really have even jurisdiction to resolve the dispute that the district judge rightly or wrongly has identified. I think under Scott versus Harris, this court does have that jurisdiction. But only as to what's shown in the video, right? I think if the evidence is blatantly contradicted by the record, if the statement at issue is blatantly contradicted by the record, I don't think it's limited to just video. I mean, the audio here is very clear, and we do have partial video showing exactly what happened. And so I see I'm running out of time, and I'll try to address my other points on rebuttal. Yes, you say time for rebuttal. Thank you. Yes, Your Honor. Do you have a follow-up question? Ms. Denson. Good morning, Your Honors. Casey Denson on behalf of Curtis and Angela Terrell. On August 11th, 2019, around 10 p.m., a little over a minute after Officer Algren saw Mr. Terrell for the first time, he violated both his Fourth and First Amendment rights. And within 10 minutes, he had done the same to Mrs. Terrell. We're here today to see whether the officers can evade liability under qualified immunity, or whether the Terrells can have the opportunity to return to discovery in the trial court to take depositions of the officers and to move toward trial. Do you agree with Mr. Davis that the district court erred in applying a subjective standard, rather than an objective standard, to what the officer did? I do not agree. In this section— Can you point us to case law that says that it's the subjective standard that controls? So I agree with Mr. Davis that the objective standard controls. And I think what the trial court was doing in the opinion, when it looks like it's applying a subjective standard and talking about the post hoc analysis, is on this issue of protective custody. The trial court found and agreed with Mr. and Mrs. Terrell that Mr. Terrell was not put into protective custody, and therefore there could not be arguments about whether there was probable cause to put him into protective custody. It wasn't talking about whether these were post hoc excuses and new laws being raised to justify the arrest. Because I agree for the arrest, everyone agrees that both these people were arrested. It's an objective standard. But when the language that makes it look like the court's applying a subjective standard is used, that's really in discussing whether Mr. Terrell was ever put in protective custody. And the court looked at the evidence and determined that no, he was never put in protective custody. I think that the most important issue here today is the one touched on briefly at the end of Mr. Davis' argument, which is whether there's jurisdiction, and that's the first thing I'd like to discuss. And then I can move on to discussing the issues arising under the Fourth Amendment and First Amendment, as well as the malicious prosecution and failure to intervene claims. And I know there's a wide breadth of issues covered in these briefs, so I'm more than happy to take questions and be interrupted as I go. But I think that the jurisdiction issue is really the first question. And interlocutory review is very limited. We can look at the materiality of the factual disputes, but not their genuineness. And yes, a different standard is applied when there is a video, if that video is such that a reasonable jury couldn't believe the account of the plaintiff based on that video. And that standard doesn't even apply if the video is ambiguous or if the video is incomplete. The video here is incomplete, according to the district court, because you can't see what happens below the car, and you can't see what happens as Mrs. Terrell is being put into Officer Algren's car. And the district court also found that the video was ambiguous. And I think there's a tremendous temptation for me to stand here and provide you with my interpretation of what the video shows. And I think that both sides have spent years arguing over what our interpretation of the video shows. And that's the power of the video, is that everyone gets a chance to review it. And here, when the district court reviewed it, they determined that it was ambiguous enough that it left genuine issues of material fact. And that was why the reason why summary judgment was denied. Mr. Davis suggests that under Scott v. Harris, we might also use the audio portion even when the video doesn't disclose what's happened. Is that correct under Scott v. Harris? I don't know if that case spoke to audio as opposed to video. And I don't want to misstate the holding of the case. But what I can say is when you have the audio and not the video, to me that suggests ambiguity, particularly when it's not matching up with other evidence that was admitted and properly considered by the trial court, because it goes back to that ambiguity. And if it's ambiguous, then the standard on summary judgment should be in the light most favorable to plaintiff. In a hypothetical case, not your case, of course, in a hypothetical case, the audio could clearly indicate that there were gunshots, even though there wasn't any video of somebody firing a weapon. Again, that's not your case. But wouldn't there be situations in which the audio would be used in the same way that the video is under Scott v. Harris? I'm just asking the question. Yeah, no, I think it's a really interesting question. And now I wish I looked at more cases on audio. But this case is primarily about video. And I could think one reason between distinguishing between video and audio evidence and why there are cases out there like Scott v. Harris on video is because a picture tells a thousand words, a video tells a million. So there is something different about video because you're not only hearing, you're also seeing and you can gauge the body language as well. And here this is all about body language, right? So I see a strong reason to distinguish between only hearing audio versus seeing the video. The district court determined after reviewing the video and assigning greater weight to what it could see on the video as it was supposed to do, that there were many disputed facts which required summary judgment to be denied, including whether the neighbors felt disturbed or threatened, what specific actions Mr. Terrell exhibited that could cause Officer Algren to suspect unlawful behavior, whether he was actively resisting on the ground, which is what we've been discussing primarily, whether he was jittery and could not stand still or complied when asked to come and raised his hands. And same for Mrs. Terrell, the court identified many disputed facts, including whether she was standing too close to medics or to Officer Algren, whether freezing or hesitating for six seconds amounted to refusal to move, and whether she interfered or acted towards emergency responders by speaking in an offensive manner. And then also on excessive force, additional disputed facts about what happened with her cell phone between her and Officer Algren, which is something, again, that's not on the video. Since the district court made a determination that these disputed material facts prevented summary judgment, we can't now construe the facts in defendant's favor on appeal, even if there are two ways that the sides could interpret the facts. That's exactly why this should be in the hands of a jury moving forward to decide to resolve the ambiguities that are in the video. As to both Mr. and Mrs. Terrell's Fourth Amendment claims, the Officer Algren should not be entitled to qualified immunity. The first of these claims would be the stop-and-frisk claim against Mr. Terrell. And the officers argued just in a footnote that there was reasonable suspicion to make the lawful investigative detention and the frisk of Mr. Terrell. But this is the first time this is being raised in a footnote, and it wasn't raised below. On the arrest, I agree it should be an objective standard. And the first two statutes that I think should be discussed for Mr. Terrell are whether there was probable cause for disturbing the peace. And they proposed two subsections of that. One is for intoxication, and the other is for using offensive words to deride, both resulting in disturbing the public. And the district court looked at the facts in the light most favorable to Mr. Terrell to determine that he was on the side of the road in a rural area acting in compliance with Officer Algren's order. And that's really where I come back to when I look at the video, is Officer Algren pulls up. Mr. and Mrs. Terrell are on separate sides of the road on their phone, and they could have easily stepped off of the road. And Officer Algren is asking him to come here, come here. And the question being, am I under arrest? And he is. He has to come here. So, you know, anything that happens after that, the court noted that he didn't become yelled, screaming, or shouting until he was already forcibly taken to the ground. And the second statute that they used to justify the arrest was obstruction of highway for willfully obstructing any public road or intentionally or criminally negligently rendering movement on the road more difficult. And the district court found that that had been waived below because it wasn't sufficiently briefed, although it's raised again here on appeal. And there are cases, including State v. Malvo, where the Louisiana Appellate Courts found that walking down the street was insufficient to create probable cause. What about interfering with an investigation? So the resisting the officer is a very interesting justification for the arrest because for Mr. Terrell, it was under Section 14108. Actually, I was referring to Mrs. Terrell. I didn't ask you.  Okay. Yes. For Mrs. Terrell, they had interfering with law enforcement as a justification for probable cause for her. And the district court also found disputed facts there on whether she stepped back or was far enough away or was too close or whether a six-second delay is a refusal to move. And, you know, one thing about the alleged interference is that a lot of it is protected by the First Amendment. And we know that those cases require that officers have a thicker skin when speech is being directed at them. So for Mrs. Terrell, they also attempted to justify it under obstruction of highway, but only referred back to the facts as to Mr. Terrell in the briefing. Although, Mr. Terrell, there was a report he'd been running up and down the streets before Officer Alban arrived, and there was nothing like that for Mrs. Terrell. So I think that that's even a steeper hurdle to climb to show that there was probable cause for obstruction of highway for her. So, you know, in addition to addressing whether there was probable cause, the court also properly looked at the issue of whether there was clearly established law such that it was objectively unreasonable in light of that law for Officer Algren to take these actions. And the court relied on Devil v. Markintel, which found that there was material issues in that case where the plaintiff was detected to have been speeding, was asked to sign a traffic ticket, and she was resisting her right to an unlawful arrest. And we argue that's really at the core of what was happening here as well. There are also issues arising under the Fourth Amendment for excessive force. And for Mr. Terrell, there's actually more incidents of force than how Mr. Davis presented it. In addition to him being taken down to the car, when you watch the video, you can see he's taken down to the ground. He's also initially taken to the car. Then taken to the ground. And then punched and kicked. And all of that happened on the ground, and you can see this in the way that the affidavits are as well, before Mr. Terrell was alleged to have bit Officer Algren. We also allege excessive force to Mrs. Terrell, who's grabbed by the back of her neck and the bun on her head and put in a headlock and put into the back of his vehicle. And the court found that we had presented sufficient evidence to show that these injuries weren't minor. And you can hear Mr. Terrell screaming that his back is broke. And there's also evidence that he had a broken tooth and lacerated lip. And Mrs. Terrell ends up with a diagnosis for PTSD and major depressive disorder. The court found that the grand factors actually weighed in favor of the plaintiffs on the first two factors. The severity of the crimes that were used to justify probable cause were not severe. And of course, if there was no probable cause, then that factor would weigh even more strongly in the plaintiff's favor. And the court found that there was not evidence to show an immediate threat to safety. And then found that there were disputed facts on whether Mr. and Mrs. Terrell were fleeing or resisting in any way. There were many cases cited to by both plaintiff and the district court to support that there was clearly established law on violently slamming or using force against individuals who were at most using passive resistance. One of the really interesting issues . . . Is it your position that there was no arguable probable cause as to any crime by either of these plaintiffs? That is our position. And the one statute that I didn't discuss that was used to support probable cause for Mr. Terrell was resisting arrest. And again, there would need to be a valid arrest for one of those other statutes for them to have probable cause to arrest him for resisting arrest. One interesting thing about our malicious prosecution claim is that Mr. Terrell was actually prosecuting for resisting a police officer with force, but also for disturbing the peace by noise. And the statute that's listed on his booking sheet, which is 14103.1, is actually for emanation of excessive sound through an amplication system. So I think on the malicious prosecution claim, if we were to get into the merits of it, you could see that it would be difficult for them to meet the standards of yet a completely different statute. But here the defendants didn't seek qualified immunity on the basis that we couldn't show the underlying constitutional violation. They limited their argument to whether that claim could be clearly established based on the decision in Thompson v. Clark. And what's helpful for us to look at is in Guerrero v. Castillo, which is the case cited to from 2023 from this court, they denied qualified immunity because the plaintiff had not identified a case from this court showing that in the relevant time period here, 2019, that that right was clearly established in the Fifth Circuit. But we actually took time in the briefing to point to both Manuel v. Juliet and Albright v. Oliver, which were from 1994 and 2017, to show that that right was already clearly established as well as from the Fifth Circuit opinion in Winfrey from 2018. And there's an unpublished opinion from the Fifth Circuit as well, Bledsoe v. Willis, which talks about a Fourth Amendment violation by initiation of criminal charges without probable cause, another way to say a malicious prosecution. You know, of course, that our unpublished opinions don't establish, don't make clearly established law, qualified immunity purposes. Absolutely. And that opinion was in 2023. So we don't cite to it because we think it makes clearly established law for when this happened in August 2019. But just to show that this exact argument, that Thompson was a change in the Fifth Circuit law and therefore wasn't clearly established, that you couldn't maliciously prosecute in the Fifth Circuit before Thompson was rejected by a panel of this court, even though that was an unpublished opinion. The Terrells also both raised First Amendment claims for retaliatory arrest, interference with their First Amendment rights, and for retaliatory excessive force. The only one of those claims that's raised on appeal is the retaliatory arrest. The court denied qualified immunity again based on all of the same factual disputes that we've been discussing here. And in this court's opinion in Turner, which is from 2017, it showed that it was clearly established that plaintiffs could record police, which is precisely what Ms. Terrell was doing here, in addition to calling 911 for help and complaining about the police officers. And this is, again, where we look back at these cases about how the First Amendment protects verbal criticism and challenge directed at police officers. Otherwise, verbal opposition to police could risk lead to arrest, which is not having that as the principal characteristic of a free nation being distinguished from a police state. The other claim that we raised was a failure to intervene. And it's very important to note that below, the officers did not seek qualified immunity on this claim specifically. They sought to dismiss the underlying constitutional violation. But aside from saying in general that they're entitled to qualified immunity on everything, they didn't specifically address it for failure to intervene. And so the district court didn't rule on it on that basis. So for that reason, I would argue that that argument is waived or even lacking jurisdiction for this court to review today. But I still provided briefing on why we could show that the underlying constitutional violation occurred because Officer Henderson and Banta arrived with time where they could have stopped the individual's rights from being violated and had reason to know that the rights were being violated, but didn't do so. One very interesting thing here, too, is the Louisiana statutory immunity claim, which the district court also found waived for failure to sufficiently brief. And we were able to provide many cases to this court showing that 9 colon 2798.1 is for these large-scale policymaking discretionary decisions. For instance, if there was to be a policy from the sheriff's office and does not apply to operational decisions by officers. And there are many cases which support that. Further, plaintiffs brought many state court intentional torts. And that discretionary statute also doesn't apply to criminal, fraudulent, malicious, intentional, or willful acts. In conclusion, I ask the court for the opportunity to return to the trial court to reopen discovery, to take a deposition for the first time in five years on these claims. Thank you. Thank you, Ms. Denson. Mr. Davis for rebuttal. Try to hit a few issues before I run out of time. First, thank you for raising the jurisdictional point, Judge Ramirez. And just to address that in a little bit more depth, I'll mostly rest on what I said before about blatantly contradicted by the clear video evidence in this case. I do want to make the point, though, that if there's any jurisdictional question, it would only apply to that very small part of this incident because the rest of the incident is all very clearly shown on video. We've got, you know, it shows exactly what Deputy Ogren was doing and what the plaintiffs were doing. I want to talk about Griggs v. Brewer, which is a binding precedent of this court from 2016. I raised it at the district court. I raised it at this court. The district court did not address it. The appellees did not address it. It's a precedent that is very factually aligned with the three uses of force at issue in this case, as to Curtis Terrell. A takedown of a drunk and actively resisting suspect, a few punches on the ground to try and gain compliance while he's continuing his active resistance, and then post-handcuffing, continued violent resistance, followed by a single strike. And I need to note that that's all Ogren did after Mr. Terrell clearly bit Mr. Ogren, as he admitted in his amended complaint. And that's a single strike, post-handcuffing to end violent active resistance. And that's not a violation of clearly established law or the Fourth Amendment at the first prong of the qualified immunity analysis. As to the other officers, Henderson and Banta, we did raise qualified immunity as to all officers at the district court. And the case law says that while qualified immunity is nominally an affirmative defense, once it's been raised, the burden shifts to the other party. And so we raised it on behalf of all of the appellants in this case. And the video is just very clear that Deputy Henderson arrived on the scene about two seconds before Mrs. Angela Terrell was finally able to be placed in the vehicle, and you hear the door close. And you also see the door close on the backseat camera, which, by the way, had clearly shown Mrs. Ogren holding her cell phone and wallet out from Deputy Ogren for about, Mrs. Terrell, I mean, holding it out from Deputy Ogren for about 40 seconds while he's saying, hand me the stuff, and she's not doing it. So it's very clear that they did not, they just weren't there, Henderson and Banta weren't there for the events that are really at issue. And they certainly did not have an opportunity, a reasonable opportunity to intervene and choose not to do so. For the reasons that I've stated this morning and in our briefing, I ask that the court reverse the district court's legally erroneous opinion and grant my clients qualified immunity. Thank you. All right, thank you, Mr. Davis. Your case and both of today's cases are under submission, and the court is in recess under the usual order.